UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOHN VITTORIOSO | : | |
| | : | |
| v. | : | C.A. No. 13-687S |
| | : | |
| ACE AMERICAN INSURANCE | : | |
| COMPANY | : | |

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B)) are cross-motions for summary judgment as to the applicable liability limits of uninsured motorist bodily injury coverage ("UM coverage") in the relevant insurance policy. (Document Nos. 34 and 54). A hearing was held on April 4, 2016. For the following reasons, I recommend that Plaintiff's Motion (Document No. 54) be GRANTED on Count I as to the amount of available UM bodily injury coverage ($2,000,000.00) and Defendant's Motion on Count I (Document No. 34) be DENIED.

### Facts

The following facts are gleaned from the parties' Local Rule CV 56(a) Statements. Plaintiff John Vittorioso seeks to recover damages from Defendant ACE American Insurance Company ("ACE") for its alleged failure to pay UM benefits to him and for its alleged bad faith under R.I. Gen. Laws § 9-1-33.[1] ACE is an insurance company that issued an automobile insurance policy

---

[1] ACE originally moved for summary judgment on Count III (the bad faith claim). However, that claim was subsequently stayed and severed by the Court on February 5, 2015, and the parties agree that the bad faith claim is not presently before the Court on these motions.

to Aramark.  The policy was in effect on October 2, 2012.  On that date, Plaintiff was a passenger in a vehicle that was being operated by John Smith in Providence, Rhode Island.  The vehicle was owned by Gelco Corporation and leased to Aramark.  While stopped in traffic, Smith's vehicle was struck from behind by another vehicle operated by Gregory Estevez.  A hit-and-run driver whose vehicle collided with Estevez's vehicle had caused Estevez's vehicle to collide with Smith's.  The at-fault, hit-and-run driver fled the scene after the accident and has never been identified.  As a result of the accident, Plaintiff claims he was seriously injured.

ACE issued Policy No. H08 71 03 99 with endorsements (the "ACE Policy") to Aramark.  The ACE Policy has a policy period of October 1, 2012 to October 1, 2013 and a $2 million limit of liability per accident or loss.  There is, however, a dispute with respect to UM coverage limits.  ACE contends that the UM Coverage Limits Endorsement (Endorsement No. 44) provides UM bodily injury limits for Rhode Island at $25,000.00 per person / $50,000.00 per accident split limits, the minimum UM limits required by Rhode Island law.[2]  ACE argues that it issued the UM Coverage Limits Endorsement in accordance with Aramark's intent to purchase the minimum amount of UM bodily injury coverage allowed by Rhode Island law.  Plaintiff disputes that the UM Coverage was properly or lawfully issued with such split limits and disputes ACE's characterization of Aramark's intent.

In connection with the ACE policy, Aramark's insurance broker, Willis of Pennsylvania, prepared, and Aramark approved, a policy submission containing coverage specifications (the "Policy Specifications").  Aramark provided the Policy Specifications to ACE for the purpose of

---

[2]  ACE has unconditionally paid the $25,000.00 to Plaintiff.  Plaintiff claims that he has suffered significant, uncompensated damages in excess of that amount.

obtaining an insurance quote for its insurance program, including UM bodily injury coverage.  In the Policy Specifications, Aramark requested to reject UM coverage where allowed by state law and to elect minimum UM limits where required by state law.  In connection with the issuance of the ACE policy, Aramark received from ACE the Rhode Island Uninsured Motorist Coverage Rejection Notice and Warning (the "Rejection Notice") which was signed on behalf of Aramark on September 12, 2012.  (Document No. 58-2).  By signing the Rejection Notice, Aramark indicated that it chose "not to buy uninsured/underinsured motorists coverage."  Id.  However, the Rejection Notice also advised that such coverage "may be rejected only if minimum liability limits are requested (25/50)."  Id.  Since Aramark did not request minimum liability limits, it could not lawfully reject UM coverage under Rhode Island law.

Also in connection with the ACE Policy, Aramark received from ACE the Rhode Island Bodily Injury and Property Damage Uninsured Motorists Coverage Selection/Property Damage Uninsured Motorists Coverage Rejection (the "UM Coverage Election Form").  In response, Aramark returned to ACE a completed and signed copy of the UM Coverage Election Form dated September 24, 2012 which selects UM coverage at limits equal to Aramark's bodily injury liability coverage, i.e., $2,000,000.00 (Document No. 58-1).[3]  The UM Coverage Election Form is inconsistent with the Policy Specifications, the Rejection Notice and the ACE policy ultimately issued to Aramark.  ACE contends that it was an "error" and that Aramark intended to complete the UM Coverage Election Form in a manner that would reject UM coverage if allowed by Rhode

---

[3] The Forms were signed by Sherry Ardito, Aramark's Associate Vice President for Global Insurance Management.  Although Ms. Ardito testified that she did not read the Forms and simply signed where flagged by Aramark's broker, (Document No. 58-3 at p. 32), Aramark is bound to the document.  See Shappy v. Downcity Capital Partners, Ltd., 973 A.2d 40, 46 (R.I. 2009) (noting the long-settled principle that a party who signs an instrument manifests his assent to it and cannot later complain that he did not read it or understand its contents.).

Island law, or to otherwise elect the minimum UM limits required by Rhode Island Law. Plaintiff disputes that the UM Coverage Election Form contains an error and argues that it clearly and unambiguously requests UM bodily injury coverage equal to the $2,000,000.00 liability policy limit.

ACE issued the ACE Policy to Aramark with the UM Coverage Limits Endorsement, which provided UM bodily injury limits for Rhode Island at $25,000.00 / $50,000.00 split limits, the minimum UM limits required by Rhode Island law. Plaintiff disputes that the Endorsement was properly or lawfully issued. On September 9, 2013, Aramark submitted a revised form (the "Corrected UM Coverage Election Form") that elects $25,000.00 / $50,000.00 UM bodily injury split limits. Plaintiff disputes that such submission can retroactively change the policy limits in place on the date of his accident by operation of law.

**Standard of Review**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the pertinent evidence is such that a rational fact finder could render a verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Nat'l Amusements, 43 F.3d at 735. Once the movant has made the requisite showing, "[t]he non-moving party may not rest merely upon the allegations or denials in its pleading, but

must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which it would bear the ultimate burden of proof at trial." Okpoko v. Heinauer, No. 10-43S, 2011 WL 835598, *15 (D.R.I. March 3, 2011). The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

Cross-motions for summary judgment "simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164,170 (1st Cir. 2004) (internal quotation marks and citation omitted). The legal standard for summary judgment is not changed when parties file cross-motions for summary judgment. Adria Int'l Group, Inc. v. Ferre Dev. Inc., 241 F.3d 103, 107 (1st Cir. 2001). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Bienkowski v. Ne. Univ., 285 F.3d 138, 140 (1st Cir. 2002) (internal quotation marks and citation omitted).

Since this is a diversity case involving a Rhode Island insurance policy, this Court must determine the rights of the parties to the insurance contract under Rhode Island law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64,78 (1938); Lyons v. Salve Regina Coll., 565 F.2d 200 (1st Cir. 1977). Under Rhode Island law, insurance policies are interpreted "according to the same rules of construction governing contracts." Town of Cumberland v. R.I. Interlocal Risk Mgmt. Trust, Inc., 860 A.2d 1210, 1215 (R.I. 2004). The Courts "look at the four corners of a policy, viewing it in its entirety, affording its terms their plain, ordinary and usual meaning." Id. If a policy's terms are ambiguous, it must be "strictly construed in favor of the insured." Id. If a policy's terms are

unambiguous, it will be construed and applied as written.  Malo v. Aetna Cas. & Sur. Co., 459 A.2d 954, 956 (R.I. 1983). An ambiguity exists when the policy is "reasonably and clearly susceptible to more than one interpretation." W.P. Assocs. v. Forcier, Inc., 637 A.2d 353, 356 (R.I. 1994). However, "the test is not whether there exist alternate meanings but whether there exist reasonable alternate meanings." RGP Dental, Inc. v. Charter Oak Fire Ins. Co., No. 04-445ML, 2005 WL 3003063 at *4 (D.R.I. Nov. 8, 2005) (emphasis in original).

**Discussion**

R.I. Gen. Laws § 27-7-2.1(a) requires that every liability insurance policy issued in Rhode Island contain UM coverage "in an amount equal to the insured's bodily injury liability limits," unless the insured affirmatively selects uninsured coverage lower than its liability coverage. Porter v. Amica Mut. Ins. Co., 789 F. Supp. 2d 284, 287-288 (D.R.I. 2011) (quoting R.I. Gen. Laws § 27-7-2.1(a)). The Regulations mandate that UM coverage in an amount equal to the insured's selection for liability limits be afforded by the insurer. See Rhode Island Department of Business Regulation ("DBR") Insurance Regulation 10 (Dec. 19, 2001 ).[4] Moreover, the insured cannot select UM coverage less than the statutory minimum for bodily injury liability, see R.I. Gen. Laws §§ 31-31-7(a), 31-47-2(13)(i)(A), unless it selects the statutory minimum, in which case the insured can reject UM coverage altogether.  R.I. Gen. Laws § 27-7-2.1(a).

When purchasing a new insurance policy, the selection of UM coverage at a limit less than bodily injury coverage limits must be done by the insured "in writing" on a waiver form that enables the insured make an informed decision whether to request less coverage.  See R.I. Gen.

---

[4] DBR Insurance Regulation 10 has since been amended. The version applicable to ACE's UM coverage limit is discussed here.

Laws § 27-7-2.1(a); DBR Insurance Regulation 10 ("[i]f the insured elects to purchase coverage in an amount less than the liability limits...such election and/or rejection must be in writing on a form and/or forms utilized for this purpose").

In construing these requirements, the Rhode Island Supreme Court has focused on the plain meaning of the words used by the General Assembly, mindful of the need to avoid an interpretation that would impose an onerous burden on insurers.  See Ferreira v. Integon Nat'l Ins. Co., 809 A.2d 1098 (R.I. 2002). Thus, if an insurer fails completely to secure a written selection for reduced UM coverage when issuing a new policy, Rhode Island courts are not reluctant to reform the policy by writing UM coverage into it by operation of law in an amount equal to the policy's full coverage for bodily injury.  See Fama v. Prudential Prop. & Cas. Ins. Co., 694 A.2d 741, 742 (R.I. 1997); Aetna Cas. & Sur. Co. v. St. Angelo, 615 A.2d 1018, 1018 (R.I. 1992) (Mem.). Similarly, courts in other jurisdictions have interpreted strictly the requirement that the insurance company must receive a written selection from the named insured to lower UM limits.  See Transguard Ins. Co. of Am., Inc. v. Hinchey, 464 F. Supp. 2d 425, 436 (M.D. Pa. 2006) (e-mail from insurance broker, not insured, requesting reduced UM coverage fails to comply with statute); Nationwide Ins. Co. v. Resseguie, 782 F. Supp. 292, 294 (M.D. Pa. 1992) (oral request from insured's husband fails to establish knowledge by insured of lower coverage; insufficient to lower UM coverage).  Finally, when the requirement of a written rejection is applicable, the Rhode Island Supreme Court has held that the insurer may interpret the insured's written intent to reject UM as expressed on the application form. daSilva v. Equitable Fire & Marine Ins. Co., 263 A.2d 100, 103 (R.I. 1970).

This case centers on the legal significance of the UM Coverage Election Form signed by Aramark on September 24, 2012. As previously discussed, the Form plainly requests UM bodily

-7-

injury coverage equal to liability coverage, <u>i.e.</u>, $2,000,000.00.[5]  While I agree with ACE that this single form is inconsistent with other evidence indicative of Aramark's intent to purchase UM coverage at the Rhode Island minimums, a "writing" is required by Rhode Island law to select lesser UM coverage and has legal significance.  Rhode Island's UM statute mandates that ACE provide UM coverage in "an amount equal to the insured's bodily injury liability limits" unless the insured selects a lower limit "in writing."  R.I. Gen. Laws § 27-7-2.1(a).  Insurance Regulation 10 confirms that such election "must be in writing on a form and/or forms utilized for this purpose." Further, the Form itself advises the insured that "[i]f Bodily Injury [UM] coverage is purchased, coverage will be included in your policy at limits equal to your...Limit for Liability Coverage, <u>unless a lower limit(s) is selected</u>." (emphasis added).  (Document No. 58-1 at p. 2).

It is undisputed that ACE never received a timely request from Aramark to purchase UM coverage at an amount lower than liability limits on a "form and/or forms utilized for this purpose" prior to issuing the policy in question.  ACE seeks to side-step this fact by arguing that it issued the policy in "substantial compliance" with Section 27-7-2.1.  ACE relies heavily upon this Court's prior decision in <u>Carpenter v. Hartford Fire Ins. Co.</u>, 990 F. Supp. 2d 180 (D.R.I. 2014).  In <u>Carpenter</u>, the plaintiff argued that the insured's failure to properly complete the statutory UM form "voided the selection so the policy revert[ed] to the default coverage limit of $2 million." 990 F. Supp. 2d at 182.  The Court disagreed and held that because the insured made a "legally impermissible" election (to reject UM coverage altogether), it was permissible for the insurer to "interpret" the UM selection form in a manner consistent with its insured's intent.  <u>Id.</u> at 193.

---

[5]  While the September 24, 2012 Form makes conflicting elections as to UM property damage coverage, Armamark's representative initialed two choices which both selected UM bodily injury coverage "at limits equal to my Bodily Injury Liability Coverage."  (Document No. 58-1 at p. 5).

Carpenter is factually distinguishable.[6]  First, the insured here, Aramark, did not make a "legally impermissible" election.  Rather, the UM Coverage Election Form dated September 24, 2012 made a legally permissible election (UM bodily injury coverage equal to liability limits) and one consistent with the presumptive coverage legally mandated by Section 27-7-2.1(a).  Second, although ACE and Aramark were on the road to a meeting of the minds as to the limits of UM coverage, that road was blocked by the clear and unambiguous selection made by Aramark on the UM Coverage Election Form.  By statute, the only policy that ACE could issue upon receipt and acceptance of the Form was the level of UM bodily injury coverage requested.  ACE was not, under such circumstances, privileged to ignore Aramark's clear and unambiguous request, unilaterally assume that it was a mistake and issue a policy with UM coverage terms not expressly requested by Aramark on the written form.  See Schermer & Schermer Automobile Liability Ins. 4th, § 19:10 (2015) ("where an uninsured motorist statute has a written rejection requirement, an actual intent to reject the coverage will not displace the need for a writing.").

ACE argues that Plaintiff's argument seeks "hypertechnical compliance" with the UM statute and would place an onerous burden on both the insured and insurer.  It contends that the statute only requires "something in writing" and that it accurately gleaned Aramark's intent from earlier writings.  However, ACE's argument here would render both the statutory requirements of Section 27-7-2.1 and the express written election made by Aramark in the required regulatory form meaningless.  The use and proper interpretation of the election form is not an onerous burden.  Assuming ACE read the Form in issue, it is not an onerous burden to either issue a policy

---

[6] Carpenter relies in part upon Jefferson v. Harco Nat'l Ins. Co., Civil No. 3:08CV486, 2009 U.S. Dist. LEXIS 51703 (E.D. Va. June 18, 2009).  However, Jefferson is also distinguishable because it involved an "ambiguous selection form" in which the insured chose UM coverage both equal to liability coverage and at a lower coverage amount.

consistent with the insured's request (and charge accordingly), or to seek clarification or confirmation from the insured prior to issuing the policy if there is any ambiguity in the manner in which the Form is completed or reasonable doubt as to the consistency of the election with the insured's known intentions.

In fact, ACE anticipated the possibility that it might not receive "fully and properly executed state coverage selection forms. (Document No. 57-5). In the applicable Casualty Program Binder, ACE and Aramark agreed that the requested coverage was "subject to and conditioned upon the insured's satisfaction of all of the material conditions described" including, as to automobile liability coverage, the receipt by ACE of "fully and properly executed state coverage selection forms." Id. at p. 4, 5. The Binder advises that failure to submit such forms "shall be deemed acceptance by the Insured that those Policies providing Automobile Liability coverage will be issued and rated to include the limits of UM/UIM coverage equal to the policy limits, or equal to the maximum limits required by law if lower than policy limits...." Id. (emphasis added). Finally, the Binder provides in such circumstances that "an additional charge for this coverage will be added to the Insured's premium for such coverage." Id. (emphasis added).

ACE argues that this language creates only an "option" that it may or may not exercise. (Document No. 70 at pp. 21-23). While ACE may choose to waive that contractual condition precedent, the language in the Binder is clearly not optional and outlines what "shall" and "will" happen if the insured fails to submit fully and properly completed state selection forms. ACE also argues that the Binder is a temporary or interim agreement that is terminated once the policy issues. While ACE is correct that the actual policy supersedes the Binder as to coverage, the question here

is whether the coverage contained in the policy was lawfully issued under these circumstances and it was not.

**Conclusion**

For the foregoing reasons, I recommend that Plaintiff's Motion for Summary Judgment (Document No. 54) be GRANTED on Count I solely as to the amount of available UM bodily injury coverage ($2,000,000.00) and that Defendant's Motion for Summary Judgment (Document No. 34) be DENIED on Count I.  I further recommend that the District Court promptly place this 2013 matter on its trial calendar for trial on Count I.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
April 22, 2016