UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
JOHN VITTORIOSO,                   )
                                   )
        Plaintiff,                 )
                                   )   C.A. No. 13-687 S
    v.                             )
                                   )
ACE AMERICAN INSURANCE COMPANY,    )
                                   )
        Defendant.                 )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

This is a dispute between the victim of a hit-and-run automobile accident, John Vittorioso, and his employer's automobile insurer, ACE American Insurance Company ("ACE"). The parties seek to adjudicate one issue: the uninsured motorists ("UM") coverage limit under the applicable insurance policy (the "Policy") that ACE issued to the employer. Magistrate Judge Lincoln D. Almond issued a Report & Recommendation ("R&R") (ECF No. 80) on the parties' cross-motions for summary judgment, recommending that the Court grant Plaintiff's motion solely as to the amount of available UM coverage and that ACE's motion be denied. ACE timely objected, arguing that the R&R misinterpreted Rhode Island Law when it determined the Policy's UM coverage limit. (ECF No. 84.)  For the reasons that follow, the objection is

1

OVERRULED and the R&R is ACCEPTED pursuant to 28 U.S.C. § 636(b)(1).

I. Background

The R&R thoroughly recounts the underlying facts, and they need not be repeated in detail here. Briefly, on October 2, 2012, Plaintiff was injured in a hit-and-run automobile accident while driving a vehicle leased to Aramark, Plaintiff's employer. When Plaintiff submitted a claim to recover for bodily injuries under Aramark's Policy, ACE indicated that Aramark's UM coverage limit – the coverage implicated in Plaintiff's claim - was $25,000, the minimum amount required under Rhode Island law. Although this is the limit stated in the Policy, Plaintiff challenges it. Pointing to the UM Coverage Selection Form Aramark completed in September 2012 — which stated that the UM coverage should be the same as the bodily injury ("BI") coverage — Plaintiff argues that the UM coverage limit is $2,000,000. ACE disavows this Coverage Selection Form because Aramark allegedly completed it in error. According to ACE, Aramark actually wanted to contract for the lowest amount of UM coverage permissible under Rhode Island Law.

The R&R recommended reforming the Policy to reflect the UM coverage Aramark selected in the UM Coverage Selection Form. It started by analyzing R.I. Gen. Laws § 27-7-2.1(a) and the regulations interpreting it that were in effect at the time. Section 27-7-2.1(a) requires insurers to provide UM coverage at

2

the insured's bodily injury ("BI") limit unless the insured selects a different limit in writing. See R.I. Gen. Laws § 27-7-2.1(a). The regulations then in force went on to specify that if an insured wanted to elect UM coverage less than the BI limits, it had to do so on a form utilized for that purpose. See R.I. Dep. of Bus. Reg. Ins. Reg. 10 (attached as Ex. F to Pl.'s Mem. in Supp. of Mot. for Summ. J., ECF No. 58-6). Relying on this writing requirement, the R&R concluded that it must give legal significance to Aramark's selection in the Coverage Selection Form. According to the R&R, if Aramark's selection was in error, "it is not an onerous burden" for ACE to have (1) read the form, and (2) sought clarification or confirmation from Aramark about the amount of UM coverage it wanted prior to issuing the policy. (See R&R 9-10, ECF No. 80.)

ACE strongly disagrees that the Court is bound by Aramark's Coverage Selection Form. Relying heavily on Carpenter v. Hartford Fire Ins. Co., 990 F. Supp. 2d 180 (D.R.I. 2014), it argues that the R&R should have overlooked the Form and deferred to Aramark's intent, which was to purchase the minimum amount of UM coverage allowed under Rhode Island Law.

II. Discussion

A few principles of statutory and contract construction provide useful background for ruling on this Objection. First, the Rhode Island Supreme Court has stated that when a statute's

3

meaning is less than clear, a court's "task is to establish and effectuate the intent of the Legislature." Ferreira v. Integon Nat. Ins. Co., 809 A.2d 1098, 1100 (R.I. 2002) (quoting R & R Assocs. v. City of Providence Water Supply Bd., 765 A.2d 432, 436 (R.I. 2001). However, "[i]f a statutory provision is clear and unambiguous, 'there is no room for statutory construction and we must apply the statute as written.'" Id. (quoting Cummings v. Shorey, 761 A.2d 680, 684 (R.I. 2000). Second, specifically as to Rhode Island's UM statute, while the legislature intended the statute to "afford[] insurers some financial protection from unwarranted claims," the "primary object remains indemnification for an insured's loss rather than defeat of his or her claim." American States Ins. Co. v. LaFlam, 69 A.3d 831, 835 (R.I. 2013). Finally, if insurance policies do not conform to a statute's requirements – including the statute's notice requirements – "the language of the policy will be disregarded and the contract will be construed to conform to the statute." Fama v. Prudential Prop. & Cas. Ins. Co., 694 A.2d 741, 742 (R.I. 1997) (quoting VanMarter v. Royal Indem. Co., 556 A.2d 41, 44 (R.I. 1989)).

As the R&R recognized, the terms of § 27-7-2.1(a) are clear: (1) by default, insurers must provide their customers with UM coverage equal to a policy's BI limit; (2) an insured may contract for UM coverage below this default coverage by indicating an alternative level of coverage in writing on a form provided for

4

that purpose; but, in any event, (3) the UM BI coverage cannot be less than a $25,000/$50,000 split. Here, Aramark and ACE complied with these statutory requirements. Aramark submitted what, by ACE's own admission, is the Policy's UM Coverage Selection Form. This form, which meets the statutory requirements, unambiguously indicates that Aramark wanted coverage equal to its BI limits. So, Aramark selected a lawfully permissible level of coverage, on the statutorily required form, all in perfect compliance with the statute. Pursuant to the statute, the Policy should have contained this level of UM coverage. Since it does not, the Court is obligated, under clear Rhode Island precedent, to reform the Policy.

ACE, of course, objects to this result and urges the Court to look past the UM Coverage Selection Form to extrinsic evidence of the parties' intent. As Carpenter and the case on which it relied, daSilva v. Equitable Fire & Marine Insurance Co., 263 A.2d 100 (R.I. 1970), hold, there are certain circumstances when this approach is appropriate. See Carpenter, 990 F. Supp. 2d at 189-93. However, the rule articulated in these cases is quite narrow, requiring two explicit conditions to be met: (1) that the coverage selection form unambiguously expresses the parties' intent; and (2) but for a technical error on the form, the form would comply with § 27-7-2.1(a). See id. at 191-93 (giving effect to a UM selection form where the insured's mistaken, unlawful selection on

5

the form – selecting no UM coverage rather than the minimum coverage permissible under law – opened the door to considering the insured's intent, which the parties agreed was to contract for the minimum amount of coverage permissible under Rhode Island law); daSilva, 263 A.2d at 102-03 (overlooking technical imperfections in the insured's written rejection of UM coverage where the writing unambiguously indicated the insured's intent).

The facts here do not satisfy these conditions. As noted above and in the R&R, Aramark's UM Coverage Selection Form was unambiguous; it indicated Aramark wanted UM coverage equal to the Policy's BI limits. The Form, thus, complies with § 27-7-2.1(a)'s writing requirement and is not technically deficient. Consequently, unlike in Carpenter and daSilva, the Court has no reason to consider Aramark and ACE's intent. If, as ACE now claims, Aramark chose the wrong level of coverage in the Form, it should have read the Form and sought to correct it prior to issuing

Aramark the insurance contract.[1] The law does not allow ACE to choose when to give effect to the Form and when not to.[2]

III. Conclusion

For the foregoing reasons, ACE's objection is OVERRULED and the Report and Recommendation is ACCEPTED pursuant to 28 U.S.C. § 636(b)(1). Plaintiff's Motion for Summary Judgment (ECF No. 54) is GRANTED as to Count I solely as it relates to the amount of available UM BI coverage. Defendant's Motion for Summary Judgment

---

[1] ACE argues that it "requested [minimum UM coverage] 'in writing' on a form created for that purpose when it submitted the Corrected UM Coverage Election Form." (Def.'s Obj. 9, ECF No. 84-1.) ACE, however, omits a key fact: that it did not obtain this "corrected" form until September 2013 - a year after ACE issued its initial policy, and a year after Plaintiff's accident. (See Ex. E to Aff. of Sherry Ardito, ACE 592, ECF No. 36-5.) This Form has no bearing on the amount of UM coverage that ACE should have written into the Policy, which took effect on October 1, 2012.

[2] In a footnote in its Reply Brief, ACE asks the Court, in the alternative, to certify this case to the Rhode Island Supreme Court. (Def.'s Reply 4 n.1, ECF No. 86.) To the extent that ACE's request is even proper, it is denied. As detailed above, the R&R's recommendation, which this Court adopts, is fully supported by Rhode Island law.

(ECF No. 34) is DENIED.  This matter shall be placed on the next trial calendar for trial on Count I.

IT IS SO ORDERED.

/s/ William E. Smith
_____
William E. Smith
Chief Judge
Date:  August 24, 2016